IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                             CRIMINAL ACTION NO. 1:05CR99

ROBERT MICHAEL JUNKINS,

    Defendant.

## ORDER/OPINION

On the 19th day of December 2005, came the United States by Shawn Angus Morgan, its Assistant United States Attorney, and also came the defendant, Robert Michael Junkins, in person and by his counsel, Charles T. Berry, for hearing on the oral motion of the United States to revoke the defendant's release on conditions pending trial. Thereupon, the matter came on to be heard upon the government's oral motion; upon the duly sworn testimony of Police Officer Michael Kiddy and Amy Richison; and upon the argument of counsel for Defendant and the Assistant United States Attorney.

## A. FACTS

Defendant was Indicted by a Grand Jury sitting in the Northern District of West Virginia on November 1, 2005. He had an Initial Appearance before this Court on December 12, 2005, at which time he was released on conditions pursuant to an Order Setting Conditions of Release. One of the conditions was that Defendant not commit another local, state or federal crime while on release.

According to the testimony, that same date, at about 10:20 p.m., City of Clarksburg Police Officer Michael Kiddy received a call of a disturbance between Defendant and Amy Richison at her home. The 911 call was placed to the police by, or at the urging of, Ms. Richison's five-year-old son. Officer Kiddy arrived at Ms. Richison's residence and talked to Ms. Richison and her son. Ms.

Richison advised the officer that she and Defendant were fighting over money. Ms. Richison said Defendant bit her thumb. Her son said Defendant grabbed Ms. Richison by the neck.

Officer Kiddy saw a small red mark on Ms. Richison's thumb. The only other indication there may have been a physical assault was that Ms. Richison was out of breath and her hair was in disarray. Officer Kiddy did not see any fighting.

Ms. Richison signed Officer Kiddy's written statement that said Defendant bit her on the thumb. Ms. Richison also signed her own written statement, in which she said Defendant had been restraining her on the bed and she had pushed, pulled, and grabbed him, trying to get him off. They were fighting about money, because Christmas was coming and Defendant hadn't given Ms. Richison "hardly any money." They were fighting and her son got scared and left the house to go to a neighbor's and called 911.

Defendant was transported to the Clarksburg Police Department and charged with Domestic Battery.

Amy Richison testified Defendant was her boyfriend. They had no children in common. Defendant stayed with her off and on. She testified she and Defendant were arguing, and her young son got nervous hearing this. Ms. Richison testified she hit Defendant in the mouth. Defendant restrained her and she hit him again in the mouth, her thumb apparently going into his mouth. She yelled, "He bit my finger," and her son ran to her cousins's house and called 911. Ms. Richison testified she gave a statement to the police officers, and that the written statement and signature were in her handwriting. She did not tell the police that she had been the aggressor in the fight. She did not put in her statement that Defendant had been restraining her because she was fighting. She repeated her testimony that she had been the aggressor in the altercation and that she hit Defendant in the mouth – she said he was bleeding.

Ms. Richison testified that she was not afraid of Defendant, as he had "never laid his hands on her." If he was released she would visit with him. He could not, however, stay with her. She had not sought a restraining order or domestic violence order against him. She had no hard feelings toward him.

### C. Findings

For the reasons set forth on the record of the hearing, the Court finds that Defendant was released on conditions of release pending trial. One of the conditions was that Defendant not commit another crime while on release. The Court admonished Defendant at the time he was released that violations of his conditions could result in his release being revoked. The Court further warned Defendant that it would be "a hard time" for him particularly with the pressure he would be under facing trial on the pending charges. Yet only 12 hours after he appeared before the Court, Defendant was arrested on a charge of Domestic Battery. The Court also finds that Ms. Richison's statements and testimony may have been the truth, but not the "whole truth." It is beyond question that Defendant and Ms. Richison had a disagreement/argument that culminated in some sort of physical violence, but the evidence adduced at the hearing was that the violence was perpetrated by Ms. Richison, and Defendant was not the aggressor. The Court notes the demeanor of Ms. Richison is that of someone who would "get in your face." Her demeanor at the hearing itself showed disdain for legal authority. On the other hand, the Court notes Defendant could have left the situation with Ms. Richison before it escalated to violence, especially in light of the Court's warning.

The Court does find there was a reasonable excuse for Defendant's not being in Court for his arraignment, because he was in jail on the Domestic Battery charge at that date and time.

The Court will not, however, place Defendant back in Ms. Richison's home or around her five-year-old child, and Ms. Richison testified she would not allow him to live there. Defendant,

3

through counsel, stated that, if continued on release, he could live with a Heather Washington until he found other housing. He had known Ms. Washington for a number of years, and she was "like a sister" to him. The Court directed Defendant's Adult Pretrial Services Officer to inquire of Ms. Washington regarding her willingness for Defendant to live at her residence, and to act as his custodian. The Adult Pretrial Services Officer was further directed to check the location where Defendant said he could stay.

If Ms. Washington agreed Defendant could live with her and agreed to act as his custodian, the Court would release Defendant under his same conditions with the addition that he not go near or contact Amy Richison or her son or go near her property. There would be no contact whatsoever. If she were to approach him, would need to walk away.

On December 20th, the Court was informed by Defendant's Adult Pretrial Services Officer that Ms. Washington had not agreed to act as Defendant's custodian. The reason stated was that Ms. Richison had been in contact with Ms. Washington already and wanted her to act as a "go between" between Defendant and herself. Ms. Washington did not want to get involved under those conditions.

Defendant's counsel was informed of this development and was to attempt to find out if Defendant would have another place to stay if released. As of this date, December 22, 2005, Defendant has not notified the probation office or this court that he has a suitable place to stay, where he could be supervised, if released.

It is therefore

**ORDERED THAT**:

1. The defendant be, and he is hereby remanded to the custody of the United States Marshal pending further proceedings in this case;

2. The defendant be confined in a facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

3. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel;

4. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which defendant is confined shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding; and

5. The Clerk shall direct copies of this order to counsel for the United States, to counsel for the defendant, to the United States Marshal, and to the United States Probation Officer.

DATED this 22 day of December, 2005.

/s/ *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE